UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

SYLVIA N. RIVAS                                                                             PLAINTIFF

v.                                                                                          CIVIL ACTION NO. 3:11CV-257

THE PENSION COMMITTEE OF
JOHNSON & JOHNSON, et al.                                                              DEFENDANTS

## MEMORANDUM OPINION

This matter is before the court on motion of the defendants, The Pension Committee of Johnson & Johnson, *et al.*, for judgment on the administrative record.[1] DN 15.

The plaintiff, Sylvia N. Rivas, was employed as an executive sales representative for Ortho-McNeil-Janssen Pharmaceuticals, Inc. She worked for the company from 1993 until she began a period of short-term disability on August 18, 2007 for a back injury. She received short-term disability benefits from August 18, 2007 to February 17, 2008 when her benefits became payable under the Long Term Disability Income Plan for Choices Eligible Employees of Johnson & Johnson ("LTD Plan"). The LTD Plan is an employee welfare benefit plan under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*

In January, 2008, Dr. Ellen Knox, a psychiatrist, submitted an Attending Physician Statement in which she stated that Rivas was totally disabled by depression and anxiety, and that she anticipated that Rivas would be able to return to work in three to six months. AR 310.

---

[1] References to the administrative record will be reflected as "AR."

On June 3, 2008, Dr. Knox submitted a second Attending Physician Statement ("APS") and a Mental Health Evaluation ("MHE") in response to a request from the plan administrator for this information. AR 188, 174-177. In the APS (AR 174-175) Dr. Knox stated that she had been seeing Rivas every two weeks for psychotherapy and medication management, with May 22, 2008 being the date of her last visit. Dr. Knox opined that Rivas was then totally disabled, that she expected a fundamental or marked change in Rivas' condition in the future, and that Rivas was expected to recover sufficiently to return to employment in three to six months.

Dr. Knox indicated in the accompanying MHE (AR 176-177) an estimated return to work date of June 1, 2009. This date exceeds by six months the three- to six-month recovery time she anticipated in the APS.

Also in June, 2008, two Independent Medical Examinations ("IMEs") were performed on Rivas, one by an orthopaedic surgeon and one by a psychologist. She was not found to have any orthopaedic problems which would impair her ability to work. AR 170. However, Dr. Dennis Buchholz found that Rivas suffered from clinically significant depression and anxiety which prevented her from performing an eight-hour per day job. AR 165. He concluded that her psychiatric treatment, including medication and psychotherapy was appropriate, and that Rivas would continue to need psychotherapy and appropriate medication for the foreseeable future. AR 165. He stated that he did not "feel that Ms. Rivas is able to return to work at the present time. AR 165. In the future she might potentially be able to return to work initially with reduced hours and job duties of a relatively routine, low-pressure nature..." AR 165.

By letter dated July 2, 2008, Rivas was approved to receive long term disability benefits under the LTD Plan, effective February 18, 2008. AR 145. The letter informed Rivas, in pertinent part,

that after twelve months, in order to continue to receive benefits under the LTD Plan, she must be found disabled from performing any job with or without reasonable accommodation.  AR 146.  The letter also made clear that the failure to provide continued medical evidence of including failing to provide requested documentation within the time specified would be grounds for termination of benefits.  AR 146-148.  The Rules and Responsibilities for LTD Plan Participants included the requirement that a participant "must remain under the ongoing care of a licensed physician who is fully qualified to treat your disabling illness(es).  If you are disabled as a result of a mental health condition you must be under the ongoing care of a psychiatrist and also receive therapy from that psychiatrist or some other licensed mental health practitioner."  AR 148.

On October 17, 2008, Rivas received a letter stating that "[a] review of our records indicates that the initial period of benefits as defined in part (b) [of the LTD Plan] will end on 2/18/2009.  After this date, you must be Totally Disabled as defined in part (c) above [defined as the complete inability to perform any job with or without reasonable accommodation].  We will be conducting a through evaluation of your claim to determine your eligibility for benefits beyond this date."  AR 135.  The letter required that within thirty days Rivas have an APS completed, and submit a Physician Contact Sheet, a Medical Authorization, copies of medical reports, office records, progress and therapy notes, diagnostic testing reports, current treatment plan, medication and therapy schedules for the preceding six months.  AR 135-136.  The letter indicates in bold print:

> **All of the above requested information must be returned within thirty (30) days from the date of this letter.  Please note that it is ultimately your responsibility to ensure all your treating physicians provide us with the requested information to evaluate your current medical status and continued eligibility for Plan benefits.  If this information is not received as requested, your LTD benefits will be terminated.**

AR 136.

Rivas did not respond to the letter or submit the required documentation by the due date. On November 25, 2008, Rivas was advised by letter that her benefits were terminated as of November 16, 2008 for failure to provide the required information. AR 128-130.

On December 16, 2008, Rivas filed a handwritten appeal of the termination of her benefits. In that letter, she stated that she had "[taken] herself off all anti-depression anti-anxiety medications made [her] sleep 16-18 hours a day..." AR 121. She also wrote: "<u>Adendum</u> [sic] – When I called Dr. Knox my former psychiatrist to discuss the dosage adjustment of my anti depression/anti-anxiety medication because of excess fatigue & paranoia she said she was going to discontinue seeing me as a patient because I missed my appointments. I reminded her of my excessive sleep needs. At that point I realized I need a new psychiatrist..." AR 123.

In a second handwritten letter sent in January, 2009 concerning her appeal, she provided the "names and telephone numbers of physicians who have provided me with care." AR 85. In that letter she states that "I have an appointment with Dr. John Light psychiatrist 502-244-5437 January 30, 2009. He is my new psychiatrist..." AR 85. There are no notes in the record concerning any such visit.

With respect to medical documentation, Rivas provided two office visit notes from October and November 2008 from Dr. Russell Williams, a general surgeon who removed Rivas' gall bladder on October 4, 2008. She also submitted two office visit notes from November and December, 2008 from Dr. John Baird. In November of 2008, Dr. Baird indicated his impressions of Rivas as "fibromyalgia/autoimmune disorder," "lupus like syndrome;" and "chronic fatigue syndrome." AR 83, but indicated that "she needs labs done..." AR 83. The note of December 4, 2008 indicates the same impression of "fibromyalgia with CFS," and notes "trial of medrol dose pack and if good cortef 10 mg BID with continued armour with consider increase to 90 mg – consider off BCP and

testosterone trial." AR 82.  There is no indication in that note or in the November note of any testing ordered, nor were any test results provided in support of Rivas' appeal.  Dr. Baird saw Rivas only those two times.

Rivas submitted a third handwritten letter in which she sought expedited treatment of her appeal.  AR 75-81.  In that letter, Rivas states that she "was approved for disability until February 2009...I let the disability manager know that I had to have emergency surgery.  Since I was suffering from severe depression before my emergency surgery.  The trauma of my illness that led to the surgery, plus the surgery itself only worsened my depression in trying to recover from this emergency surgery and my continued severe depression, the last thing on my mind was to provide [the claims administrator] with my documentation of my condition, especially since I had been approved for disability until February 2009."  AR 75-76.

On January 27, 2009, Rivas was informed by letter that her appeal had been denied on the basis of her failure to provide timely medical certification or other proof of continued total disability. AR 65-67.  The letter indicated that the termination of benefits was affirmed, "As the employee has still not provided all of the information requested, has not submitted information supporting she is in regular care and treatment, has not provided certification from any provider that she is unable to work and has not provided information supporting cognitive deficits or any other reason she was unable to comply with the request for medical information previously noted."  AR 67.

The review afforded her also included a clinical review of the information which was provided in support of the appeal.  The review concluded that her gall bladder surgery was not a justification for failure to provide timely documentation, as her surgery was uncomplicated, and she had forty-nine days from the date of her surgery in which to provide the requisite items.  It was noted that the standard is a maximum twenty-eight days for recovery from such surgery.  AR 66.

Additionally, it was determined on review that the office notes relating to "fibromyalgia and chronic fatigue syndrome" were unsupported by any diagnostic testing, such as the laboratory tests mentioned in the November note.  AR 66.

Finally and most significantly, the review established that there was

> [n]o information received supporting the employee is under the regular care of any provider and employee did not provide a physician contact sheet, an attending physician statement, a release to work form or any certification from a provider that she is unable to work.  Additionally, employee's benefits were last reinstated for mental health issues and no information has been received from a Mental health provider since 6/08.  There is no information to support the employee is under the care and treatment of a mental health provider or is receiving regular care and treatment from any provider.

AR 66.

On February 23, 2009, Rivas filed a second appeal through her attorney.  On March 3, 2009, Rivas was notified that her appeal had been received and that additional supporting medical information was needed to determine her eligibility for LTD benefits.  AR 62.  Dr. Baird completed an APS, a medical authorization, and a Release to Work form on March 3, 2009.  He diagnosed chronic fatigue, fibromyalgia, and depression.  AR 514-517.  In May 2009, Dr. Baird completed a Lupus Residual Functional Capacity Questionnaire ("RFC").  AR 788-795.  No medical reports, therapy notes, test results or other documentation were submitted concerning Rivas' condition.

On August 19, 2009, a final denial of benefits to Rivas was again affirmed.  AR 806.  The prior bases for rejection of her claim were reiterated.

In addition, the findings of Dr. Baird were discounted.  The Plan requires the claimant to be under the ongoing care and treatment of a licensed physician qualified to treat the condition.  He is not a rheumatologist or psychiatrist, but rather is licensed in physical medicine/rehabilitation.  Dr. Baird had seen Rivas only twice, the RFC was dated three months after her LTD benefits ceased, and

it was unaccompanied by any office visit records, diagnostic testing or other objective evidence. AR 807. Further, Rivas had not been receiving psychiatric treatment for the preceding six months.

A supplemental review was performed at Rivas' request, after she obtained a favorable social security disability determination. Her claim was reviewed in light of the decision. On April 28, 2010, Rivas was notified that the denial of benefits was being upheld, as she failed to meet her obligations under the LTD Plan requiring periodic proof of disability and of ongoing care and treatment for the conditions on which a claim of disability is based. AR 842.

The parties agree that the LTD Plan grants discretion to the plan administrator and, as such, this court is bound by the arbitrary and capricious standard of review. *Metropolitan Life Ins. Co. v. Glenn*, 544 U.S. 105 (2008). The arbitrary and capricious standard is highly deferential. *Hodges v. American Heritage Life Ins. Co.,* No. 3:07CV-345-S, 2008 WL 2117139 (W.D.Ky. 2008). When it is possible to offer a reasoned explanation, based on the evidence, for the particular outcome, the decision is not arbitrary and capricious and it must be affirmed. *Perry v. United Food & Commercial Workers Dist. Unions*, *405 & 442*, 64 F.3d 238, 242 (6th Cir. 1995). Our review is limited only to the record as actually considered by the administrator. *Killian v. Healthsource Provident Adm'rs, Inc.*, 152 F.3d 514, 522 (6th Cir. 1998). The mere fact that contradictory evidence exists does not render an administrator's decision arbitrary and capricious. *Smith v. Unum Life Ins. Co. of America*, 305 F.3d 789, 794 (8th Cir. 2002). The plaintiff bears the burden of proving entitlement to benefits under the terms of the policy. *Rose v. Hartford Fin. Servs. Group*, *Inc.*, 268 Fed.Appx. 444, 452 (6th Cir. 2008).

Our lengthy recitation of the review process concerning this claim was for the purpose of demonstrating the careful consideration given at each level of appeal. The bottom line is that Rivas failed to satisfy the terms of the LTD Plan, thus rendering her ineligible for continuing benefits as

of November 16, 2008. Nothing about this decision was arbitrary or capricious. Even after terminating her benefits in accordance with the Plan, Rivas was given the opportunity throughout the appeals process to provide the necessary documentation to establish her continuing disability and her compliance with the requirements for ongoing care and treatment. The administrator's findings that no valid justification existed for her failure to provide the required documentation and that she was not receiving the requisite ongoing care and treatment from a physician qualified to treat her conditions are well-grounded in the administrative record.

The administrator considered that Rivas had had surgery, but determined that adequate recovery time for an uncomplicated gall bladder removal had past prior to the due date for the documents. Rivas herself stated that providing documents to the administrator "was the furthest thing from [her] mind" at that time. She did not contact the administrator or provide the required documents.

Additionally, Rivas provided no evidence that she was under the ongoing care of or receiving the required treatment from a psychiatrist for depression and anxiety. She stated in one of her letters to the administrator that she had taken herself off of all psychiatric medications and that her psychiatrist was no longer willing to see her because she failed to keep her appointments. While Dr. Baird stated in March, 2009 that she was suffering from depression, he is not a psychiatrist. He did not support his diagnosis with any medical documentation whatsoever. He was clearly not providing her ongoing psychotherapy which she was required to obtain in order to remain eligible for benefits.

Dr. Baird is also not a rheumatologist, performed no diagnostic tests, and only saw Rivas twice before diagnosing her with fibromyalgia and chronic fatigue syndrome. The diagnosis was also offered for the first time after her benefits had been terminated and he did not indicate an onset date. These are legitimate bases upon which to decline to accept the diagnosis as inadequately supported.

- 8 -

However, even if the administrator accepted the diagnoses, Rivas was not receiving ongoing care and treatment from a rheumatologist for these conditions. Rivas has not shown that it was arbitrary and capricious for the administrator to require that a rheumatologist diagnose and treat fibromyalgia and chronic fatigue syndrome.

Finally, the fact that Rivas received a favorable social security disability determination did not alter the administrator's view of the record and the determination that Rivas had failed to comply with the terms of the LTD Plan. Again, the administrator fully reviewed the claim and determined that the social security administrator's findings did not offer any basis for alteration of the decision under the Plan. Compliance with the terms of a disability plan and disability under the social security regulations are separate and distinct considerations. We find no error in the conclusion of the Plan administrator to affirm the denial of benefits.

For the foregoing reasons, the motion of the defendants, Pension Committee of Johnson & Johnson, *et al*., for judgment on the administrative record will be granted by separate order.

**IT IS SO ORDERED.**